**FILED**

**AUG - 1 2011**

Clerk, U.S. District & Bankruptcy
Courts for the District of Columbia

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

STATE OF FLORIDA
Office of the Secretary of State
500 S. Bronough Street
Tallahassee, FL 32399-0250

      Plaintiffs,

vs.

UNITED STATES OF AMERICA and
ERIC H. HOLDER, JR., in his official
capacity as Attorney General of the
United States,

      Defendants.

_____/

Civil Action No. _____
THREE JUDGE COURT REQUESTED

Case: 1:11-cv-01428
Assigned To : Kollar-Kotelly, Colleen
Assign. Date : 8/1/2011
Description: 3-Judge Court

## COMPLAINT FOR DECLARATORY JUDGMENT

The State of Florida, by and through its Secretary of State Kurt S. Browning, seeks a

declaratory judgment that recently-enacted changes in the Florida Election Code fully comply

with Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c ("Section 5").

The changes have neither the purpose nor will they have the effect of denying or abridging the

right to vote on account of race, color, or membership in a language minority.

### PARTIES

1.     Plaintiff, the State of Florida, is a State of the United States of America and brings

this action on behalf of itself and its citizens.

2.     Kurt S. Browning, in his official capacity as the Secretary of State of Florida, is

the chief elections officer of the State of Florida. Secretary Browning has the responsibility, *inter*

*alia*, to obtain and maintain uniform implementation of the election laws, to ensure compliance

*1*



RECEIVED
Mail Room

AU: - 1 2011

Angela D. Caesar, Clerk of Court
U.S. District Court, District of Columbia

with federal election laws, and to require the supervisors of elections to perform their official duties.

3.    Defendants are the United States of America and Eric H. Holder, Jr., in his official capacity as Attorney General of the United States. Attorney General Holder is charged with certain responsibilities related to Section 5, including the defense of Section 5 declaratory judgment actions brought in the United States District Court for the District of Columbia.

## NATURE OF THE ACTION

4.    On May 19, 2011, Committee Substitute for Committee Substitute for House Bill No. 1355, an omnibus bill revising the Florida Election Code, became law. This law has been codified at Chapter 2011-40, Laws of Florida (the "Act").

5.    The Act contains revisions to Florida statutes governing third-party voter registration organizations (§ 97.0575, Fla. Stat.), state constitutional amendments proposed by initiative (§ 100.371, Fla. Stat.), election-day address changes (§ 101.045, Fla. Stat.), and early voting (§ 101.657, Fla. Stat.). These revisions constitute covered changes under Section 5 to the extent that covered jurisdictions within Florida seek to administer the changes.

6.    Florida is a "partially covered" state under the Voting Rights Act because five Florida counties are subject to the preclearance requirements of Section 5. Specifically, Collier, Hardee, Hendry, Hillsborough, and Monroe Counties were designated as covered jurisdictions under Section 4 of the Voting Rights Act, 42 U.S.C. § 1973b(b).

7.    The five Florida jurisdictions are covered jurisdictions based on the Attorney General's determination that, on November 1, 1972, these jurisdictions provided materials and information relating to the electoral process only in the English language; more than five percent of the citizens of voting age were members of a single language minority; and less than half of

2

the voting-age citizens in these jurisdictions were either registered to vote or voted in the Presidential election of November 1972.

8.     Based on the same formula originally adopted in 1975 and still found in Section 4 of the Voting Rights Act, these five counties remain covered jurisdictions subject to the preclearance requirements of Section 5.

9.     As a result of the determinations designating the five Florida counties as covered jurisdictions, the covered changes within the Act must be precleared before the covered jurisdictions seek to administer the changes.

10.     On June 8, 2011, Secretary Browning submitted the Act to the United States Department of Justice for administrative preclearance. The Department of Justice has not interposed an objection to the changes, but it has not yet precleared the changes. On July 29, 2011, the four sections of the Act at issue in this action were withdrawn from administrative preclearance.

11.     Florida brings this action pursuant to 42 U.S.C. § 1973c and 28 U.S.C. § 2201, seeking a declaratory judgment that the covered changes described above neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority, thereby allowing the State to uniformly enforce its elections laws.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction under Section 14(b) of the Voting Rights Act, as amended, 42 U.S.C. § 1973l, and under 28 U.S.C. § 1331, because this action arises under the Constitution and laws of the United States. This Court has jurisdiction to render declaratory relief under 28 U.S.C. § 2201.

13.     Venue is proper in this Court pursuant to Section 5 of the Voting Rights Act and 28 U.S.C. § 2284. This action is properly determinable by a three-judge district court in accordance with Section 5 and 28 U.S.C. § 2284.

## FACTUAL ALLEGATIONS

14.     The Act, Chapter 2011-40, Laws of Florida, revises numerous statutes within the Florida Elections Code (Chapters 97-106 of the Florida Statutes). The Act addressed a wide range of subjects, including registration of minor political parties, political advertisement disclaimers, and reporting of election results by supervisors of elections.

15.     This is an action for declaratory judgment, pursuant to Section 5 of the Voting Rights Act, related to four sections of the Act: Section 4 (addressing third-party voter registration organizations); Section 23 (addressing state constitutional amendments proposed by initiative); Section 26 (addressing change of residence); and Section 39 (addressing early voting). This action is filed for the purpose of determining an actual controversy between the parties within the Court's jurisdiction, and to allow the State to uniformly enforce duly-enacted amendments to the Florida Election Code. Under the Voting Rights Act, the provisions that are the subject of this action cannot be administered by the covered jurisdictions until this Court grants the declaratory relief requested herein.

16.     As described below, each of these provisions applies uniformly to all Floridians regardless of race, color, or membership in a language minority. These provisions were not adopted with the purpose and will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

4

## Section 4 (Third-Party Voter Registration Organizations)

### Benchmark Practice – Third-Party Voter Registration Organizations

17.    Prior to 1995, only state officials and individuals deputized by supervisors of elections as registrars were permitted to collect voter registration applications in Florida. The Florida Legislature's first comprehensive regulation of third-party voter registration organizations came in 2005 with the enactment of section 97.0575, Florida Statutes. This statute, as amended in 2007, represents the "benchmark" practice for purposes of Section 5.

18.    Under the benchmark practice, a "third-party voter registration organization" is defined as "any person, entity, or organization soliciting or collecting voter registration applications" other than a person registering, or collecting an application from, that person's spouse, child or parent; or a person who registers to vote or collects voter registration applications as an employee or agent of the Florida Department of State's Division of Elections ("Division"), a supervisor of elections, the Department of Highway Safety and Motor Vehicles, or a voter registration agency. § 97.021(37), Fla. Stat.

19.    "Prior to engaging in any voter registration activities," the benchmark practice required each third-party voter registration organization to name a registered agent in the state and submit additional information to the Division. § 97.0575(1), Fla. Stat. Specifically, the benchmark practice required each third-party voter registration organization to submit to the Division a form containing:

> the name of the registered agent and the name of those individuals responsible for the day-to-day operation of the third-party voter registration organization, including, if applicable, the names of the entity's board of directors, president, vice president, managing partner, or such other individuals engaged in similar duties or functions

§ 97.0575(1), Fla. Stat.

20.     Because each third-party voter registration organization that collected voter registration applications "serves as a fiduciary to the applicant," the benchmark practice required each organization to ensure that any application entrusted to the organization, "irrespective of party affiliation, race, ethnicity, or gender," is "promptly delivered to the division or the supervisor of elections." § 97.0575(3), Fla. Stat.

21.     The benchmark practice provided for fines on any third-party voter registration organization that fails to promptly deliver applications that it has collected. § 97.0575(3), Fla. Stat. The applicable fines were $50 for each application received by a supervisor of elections or the Division more than ten days after the applicant delivered the completed application to the third-party voter registration organization; $100 for each application collected by a third-party voter registration organization before book closing for any given election for federal or state office and received by a supervisor of elections or the Division after the book-closing deadline for that election; and $500 for each application collected by a third-party voter registration organization that is not submitted to the Division or a supervisor of elections. § 97.0575(3), Fla. Stat. The amounts of these fines increased to $250, $500, and $1,000, respectively, for willful violations. § 97.0575(3), Fla. Stat. The benchmark practice did not impose any civil or criminal penalties on a third-party voter registration organization solely for failure to register with the Division. § 97.0575(2), Fla. Stat.

22.     The benchmark practice capped at $1,000 the maximum aggregate fine that could be assessed against any third-party voter registration organization (including affiliate organizations) for all violations committed in a calendar year. § 97.0575(3), Fla. Stat. The benchmark practice required the Secretary of State to waive the fines upon a showing that the failure to deliver the application promptly was based upon force majeure or impossibility of

6

performance and provided for a three-fourths reduction in the applicable fines for third-party voter registration organizations complying with the statute's registration requirements. § 97.0575(3), Fla. Stat. Under the benchmark practice, the Division had authority to investigate violations of the third-party voter registration organization statute, assess civil fines imposed under the statute, and enforce the fines "through any appropriate legal proceedings." § 97.0575(4)(b), Fla. Stat.

23.    Finally, the benchmark practice required third-party voter registration organizations to submit a report to the Division of Elections on or before the 15th day after the end of each calendar quarter providing the date and location of any organized voter registration drives conducted by the organization in the prior calendar quarter. § 97.0575(1), Fla. Stat.

**Changes Sought to Be Precleared – Third-Party Voter Registration Organizations**

24.    The benchmark practices described above were largely preserved under Section 4 of the Act, Chapter 2011-40. The third-party voter registration statute, as amended, continues to require third-party voter registration organizations to register with the Division of Elections "before engaging in any voter registration activities." § 97.0575(1). As under the benchmark, third-party voter registration organizations must promptly deliver voter registration applications that they collect. § 97.0575(3)(a), Fla. Stat. The applicable fines for untimely delivery of applications are unchanged, as is the maximum aggregate fine of $1,000 for all violations committed by a third-party voter registration organization and its affiliates in a calendar year. § 97.0575(3), Fla. Stat.

25.    The principal change in the Act relates to the time period for third-party voter registration organizations to submit completed voter registration applications to the Division or a supervisor of elections. § 97.0575(3), Fla. Stat. Where the benchmark required completed

7

applications to be submitted "promptly" and imposed a $50 fine for applications received more

than ten days after they were collected, the new law imposes a $50 fine for applications received

by the Division or a supervisor of elections more than 48 hours after the applicant delivers the

completed voter registration application to the organization (or on the next business day, if the

office is closed). § 97.0575(3)(a), Fla. Stat. The Act also removes the potential for a three-fourth

reduction in fines for third-party voter registration organizations that have complied with the

registration requirements but provides that force majeure or impossibility of performance is an

affirmative defense to a failure to timely deliver a completed application. § 97.0575(3)(b), Fla.

Stat. Under the changes in the Act, the Secretary of State may waive the fines assessed against an

organization upon a showing of force majeure or impossibility of performance. § 97.0575(3)(b),

Fla. Stat.

      26.     The Act also assigns new administrative responsibilities to the Division and

supervisors of elections regarding distribution of and accounting for voter registration

applications (§ 97.0575(2), (5) Fla. Stat.), requires each registration agent of a third-party voter

registration organizations to provide a sworn statement stating that the agent will obey all state

laws and rules regarding the registration of voters (§ 97.0575(1)(d), Fla. Stat.), requires voter

registration forms provided to each third-party voter registration organization to contain

information identifying the third-party voter registration organization to which the forms are

provided (§ 97.0575(2), Fla. Stat.), and requires supervisors of elections to provide information

to the Division on voter registration forms provided to and received from each third-party voter

registration organization. (§ 97.0575(2), Fla. Stat.)

      27.     Finally, the Act shifts enforcement responsibility of the third-party voter

registration statute from the Division to the Florida Attorney General. § 97.0575(4), Fla. Stat. If

the Secretary of State reasonably believes that a person has committed a violation of the statute, the Secretary may refer the matter to the Attorney General. § 97.0575(4), Fla. Stat. The Attorney General may institute a civil action for a violation of, or to prevent a violation of, the statute. § 97.0575(4), Fla. Stat.

<u>**Purpose and Effect – Third-Party Voter Registration Organizations**</u>

28.     The changes to the third-party voter registration statute contained in the Act were adopted to address Florida's legitimate interests in: 1) ensuring that all voter registration applications are properly and timely submitted; 2) holding third-party voter registration organizations accountable for the applications they collect; and 3) preventing instances of fraud. The changes were not adopted for the purpose of denying or abridging the right to vote on account of race, color, or membership in a language minority.

29.     The changes in the Act apply equally to every group meeting the definition of a third-party voter registration organization. Moreover, the benchmark statute's requirement that each third-party voter registration organization ensure the prompt delivery of all voter registration applications they collect, "irrespective of party affiliation, race, ethnicity, or gender," – remains unchanged. § 97.0575(3), Fla. Stat. The Act therefore protects the right to vote of all Floridians and does not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

<u>**Section 23 (Constitutional Amendments Proposed by Initiative)**</u>

<u>**Benchmark Practice – Constitutional Amendments Proposed by Initiative**</u>

30.     Under the benchmark practice, a constitutional amendment proposed by initiative shall be placed on the ballot for the general election provided the initiative is filed with the Secretary of State no later than February 1 of the year the general election is held. § 101.371(1),

Fla. Stat. A petition is deemed to be filed on the date the Secretary of State determines that valid and verified petition forms have been signed by the constitutionally required number and distribution of electors. § 101.371(1), Fla. Stat. Each signature on an initiative petition must be dated and is valid for a period of four years following that date. § 101.371(3), Fla. Stat.

31.    The benchmark practice required the sponsor of the petition to submit signed and dated forms to the appropriate supervisor of elections for verification of the number of registered electors whose valid signatures appear. § 101.371(3), Fla. Stat. The supervisor of elections must verify the signatures within 30 days. § 101.371(3), Fla. Stat. A supervisor may verify that a signature is valid only if it is an original signature; accurately records the date on which the form was signed; accurately sets forth the elector's name, address, county, and voter registration number or date of birth; and if the elector is, at the time he or she signed the form, a duly-qualified and registered elector authorized to vote in the county in which his or her signature was submitted. § 101.371(3), Fla. Stat.

32.    The benchmark practice also provided a statutory procedure for an elector to revoke his or her signature within 150 days of the date on which he or she signed the petition. § 101.371(6), Fla. Stat. This signature revocation procedure, however, was invalidated by the Florida Supreme Court on state law grounds in *Browning v. Florida Hometown Democracy, Inc., PAC*, 29 So. 3d 1053 (Fla. 2010).

### Changes Sought to Be Precleared – Constitutional Amendments Proposed by Initiative

33.    The changes contained in the Act amend the benchmark practice by clarifying that the "appropriate" supervisor of elections to whom signed petitions must be submitted for verification is the supervisor of elections for the county of residence listed by the person signing the form. § 101.371(3), Fla. Stat. The Act provides that a signature on a petition form is valid for

a period of two years following the date of the signature, rather than four years. § 101.371(3), Fla. Stat. The Act imposes a new obligation on local supervisors of elections by requiring each supervisor to notify a petition sponsor of misfiled petitions. § 101.371(3), Fla. Stat. The Act also amends the benchmark practice by adding a requirement that supervisors verify that a petition form sets forth the elector's city of residence. § 101.371(3), Fla. Stat.

34.     The changes in the Act also amend the benchmark requirement that a petition signer be a registered voter of the county where the petition was submitted for verification at the time the petition was signed. Under the Act, a signature may be verified if the elector is a duly-qualified and registered voter of the State of Florida (rather than the specific county) both at the time of signing and at the time of verification.

35.     Finally, the Act repeals the statutory provisions related to signature revocation that have been invalidated by the Florida Supreme Court. § 101.371(6), Fla. Stat.

### Purpose and Effect – Constitutional Amendments Proposed by Initiative

36.     The covered changes to the statute governing constitutional amendments proposed by initiative were adopted for the purpose of 1) clarifying the signature verification responsibilities of county supervisors of elections; 2) repealing statutory language related to signature revocation that has been judicially invalidated; and 3) ensuring that constitutional amendments proposed by initiative demonstrate significant contemporaneous support for the proposed changes. They were not adopted with the purpose of denying or abridging the right to vote on account of race, color, or membership in a language minority.

37.     The covered changes to section 101.371, Florida Statutes, apply equally to all Floridians proposing a constitutional amendment by initiative or signing a signature petition without respect to the race, color, or language minority status of the signatory. The changes will

not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

## Section 26 (Change of Residence)

### Benchmark Practice – Change of Residence

38.     Under the benchmark practice, a person may only vote in the election precinct or district in which the person has his or her legal residence and in which the person is registered to vote. § 101.045(1), Fla. Stat. An elector who has moved from the address listed on the person's voter registration record must provide notification of the move to the supervisor of elections. § 97.1031, Fla. Stat. An elector who has moved from the precinct in which the elector is registered, but who has not provided notification of the move to the supervisor of elections before the day of an election, may nonetheless be permitted to vote in the precinct to which he or she has moved provided the elector completes an affirmation of change of legal residence. § 101.045(2)(a), Fla. Stat.

39.     Under the benchmark practice, an elector who has completed an affirmation of change of legal residence may be permitted to vote in the precinct to which he or she has moved his or her legal residence. § 101.045(2), Fla. Stat. If the elector's registration can be verified, the elector is entitled to vote a regular ballot. § 101.045(2)(d), Fla. Stat. If the elector's eligibility to vote cannot be determined, he or she is entitled to cast a provisional ballot. § 101.045(2)(d), Fla. Stat. As an alternative to the affirmation of change of address, an elector may complete a voter registration application that indicates the change of address of legal residence. § 101.045(2)(c), Fla. Stat.

40.     Upon receipt of the affirmation or application certifying a change of address of legal residence, the supervisor of elections shall, as soon as practicable, make the necessary

changes in the statewide voter registration system to indicate the change in address.

§ 101.045(2)(d), Fla. Stat.

## Changes Sought to Be Precleared – Change of Residence

41.    The changes contained in the Act preserve the benchmark practice for all electors whose change of residence is within the same county and for active uniformed services voters and members of their families. § 101.045(2), Fla. Stat. The Act amended the benchmark practice only for electors who have changed their legal residence, have not previously notified the supervisor of elections of the change of address, and whose change of address is from outside the county. § 101.045(2)(b), Fla. Stat. An elector in these circumstances may not change his or her legal residence at the polls and vote a regular ballot, but is entitled to vote a provisional ballot upon completion of the affirmation of change of legal residence. § 101.045(2)(b), Fla. Stat.

42.    The standards for canvassing a provisional ballot are unchanged by the Act. A provisional ballot "shall be counted unless the canvassing board determines by a preponderance of evidence that the person was not entitled to vote." § 101.048(2)(a), Fla. Stat. In determining whether a person casting a provisional ballot is entitled to vote, the county canvassing board shall review the information provided in the Voter's Certificate and Affirmation, any written evidence provided by the person casting the ballot, any other evidence presented by the supervisor of elections, and, in the case of a challenge, any evidence presented by the challenger. § 101.048(2)(a), Fla. Stat.

## Purpose and Effect – Change of Residence

43.    The changes to the change of residence provisions contained in the Act were adopted as an anti-fraud measure, to protect against the possibility of a single elector casting

ballots in more than one county. They were not adopted with the purpose of denying or abridging the right to vote on account of race, color, or membership in a language minority.

44.     The changes in the Act apply equally to every elector regardless of race, color, or membership in a language minority. The only electors affected by the changes in the Act are those who (1) have changed their legal residence from one county to another county; (2) have failed to notify the supervisor of elections regarding the change of residence (in writing, by telephone, or by electronic means) at any time prior to election day; and (3) are not an active uniformed services voter or a member of his or her family.

45.     Even the limited number of electors affected by the changes in the Act will not have their right to vote denied or abridged on account of race, color, or membership in a language minority. Each such elector is entitled to cast a provisional ballot, which "shall be counted" by the canvassing board if the elector was registered and entitled to vote at the precinct where the person cast his or her vote. § 101.048, Fla. Stat. Because the canvassing board will have the elector's certificate and affirmation before it, Secretary Browning does not anticipate any need in the ordinary case for a voter to provide additional information regarding eligibility to the canvassing board (although the option remains available under section 101.048, Florida Statutes). An elector whose regular ballot would have been lawfully cast under the benchmark practice will therefore have his or her provisional ballot counted under the new statute.

46.     The rejection of a provisional ballot cast by an elector who was not registered, or who was not entitled to cast the ballot, or who had already voted in the election, does not amount to a denial or abridgement of the right to vote. The Act does not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

### Section 39 (Early Voting)

### Benchmark Practice – Early Voting

47.     The benchmark practice for early voting in Florida was enacted by the Florida

Legislature in 2005 and is codified at Section 101.657, Florida Statutes. Under the benchmark

practice, each supervisor of elections shall allow an elector to vote early "as a convenience to the

voter." § 101.657(1)(a), Fla. Stat. The supervisor of elections shall designate each early voting

site no later than 30 days prior to an election. § 101.657(1)(b), Fla. Stat. Early voting must be

provided at the main office of the supervisor of elections, and may be provided at a branch

office, city hall, or permanent public library facility. § 101.657(1)(a), Fla. Stat.

48.     The benchmark practice generally provides for early voting to begin "on the 15th

day before an election and end on the 2nd day before an election." § 101.657(1)(d), Fla. Stat.

During the applicable period, the benchmark practice requires early voting to be provided "for 8

hours per weekday and 8 hours in the aggregate each weekend at each site" – a total of 96 hours

of early voting. § 101.657(1)(d), Fla. Stat. Early voting sites may open no sooner than 7 a.m. and

close no later than 7 p.m. on each applicable day. § 101.657(1)(d), Fla. Stat. All early voting sites

in a county shall be open on the same days for the same amount of time. § 101.657(1)(c), Fla.

Stat. Any person in line at the closing of an early voting site is allowed to vote. § 101.657(1)(c),

Fla. Stat.

### Changes Sought to Be Precleared – Early Voting

49.     The Act preserves the option of early voting as a convenience to the voter and

provides increased flexibility to supervisors of elections regarding the scheduling of early voting

in each county. Under the Act, early voting shall now begin on the 10th day before an election

that contains state or federal races (rather than the 15th day) and end on the 3rd day before the

15

election (rather than the 2nd day). § 101.657(1)(d), Fla. Stat. Early voting shall be provided for no less than 6 hours and no more than 12 hours per day at each site. § 101.657(1)(d), Fla. Stat. The Act repeals the prior provision requiring that all early voting sites in a county be open on the same days for the same amount of time. § 101.657(1)(c), Fla. Stat. The Act also repeals the provision limiting early voting sites to operation between the hours of 7 a.m. and 7 p.m. § 101.657(1)(d), Fla. Stat.

50.     For elections not held in conjunction with a state or federal election, the statute provides supervisors of elections the discretion to provide early voting and to determine the hours of operation of early voting sites. § 101.657(1)(d), Fla. Stat.

### Purpose and Effect – Early Voting

51.     The changes to the early voting statute contained in the Act were adopted to expand access to early voting and provide each supervisor of elections additional flexibility regarding the scheduling of early voting. The changes to the early voting statute contained in the Act were not adopted with the purpose of denying or abridging the right to vote on account of race, color, or membership in a language minority.

52.     The Act provides for expanded access to early voting in several ways. Most significantly, the Act mandates additional hours of weekend early voting. Under the Act, weekend early voting is increased from 16 total hours to a minimum of 18 hours and as many as 36 hours. § 101.657(1)(d), Fla. Stat. By more than doubling the maximum number of weekend early voting hours, the Act provides for increased accessibility to the convenience of early voting.

53.     The Act also increases the maximum number of weekday early voting hours: from 8 hours to 12 hours. § 101.657(1)(d), Fla. Stat. This change provides additional early voting

opportunities for electors whose work schedules do not allow time to vote during the traditional 8 hour work day.

54.     If precleared, the Act will also mandate 6-12 hours of Sunday early voting in Florida's five counties covered by Section 5 of the Voting Rights Act. None of the covered counties offered Sunday early voting in the 2008 or 2010 primary or general elections.

55.     The changes to early voting contained in the Act will not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority. Indeed, the Act will likely result in the greatest benefit to low-income residents in the covered counties who may have found it more difficult to vote early during the limited 8 hour window allowed under the benchmark practice.

## CAUSES OF ACTION

## COUNT ONE: DECLARATORY JUDGMENT – THIRD-PARTY VOTER REGISTRATION

56.     The State of Florida realleges, adopts, and incorporates by reference paragraphs 1 through 55 above.

57.     The covered changes to section 97.0575, Florida Statutes, were adopted for the purpose of 1) ensuring that all voter registration applications are properly and timely submitted; 2) holding third-party voter registration organizations accountable for the applications they collect; and 3) preventing instances of fraud. The changes were not adopted for any discriminatory purpose.

58.     The covered changes to section 97.0575, Florida Statutes, when compared to Florida's existing or "benchmark" practices, do not lead to a "retrogression" in the position of racial minorities in that they do not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

17

59.     The covered changes to section 97.0575, Florida Statutes, accordingly have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

60.     The covered changes to section 97.0575, Florida Statutes, do not and will not prohibit any citizen of the United States from electing his or her preferred candidate of choice.

61.     The covered changes to section 97.0575, Florida Statutes, apply uniformly to all Floridians regardless of race, color, or membership in a language minority.

62.     The covered changes to section 97.0575, Florida Statutes, do not result in any discriminatory effect that is statistically significant.

63.     The State of Florida is entitled to a judgment that the covered changes to section 97.0575, Florida Statutes, neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, and that Florida's covered jurisdictions may administer these covered changes without further delay.

WHEREFORE, the State of Florida respectfully requests that this Court:

A.     Convene a three-judge district court to hear the matters raised in this Complaint;

B.     Enter a declaratory judgment that the covered changes to section 97.0575, Florida Statutes, neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority and may be administered by Florida's covered jurisdictions without impediment on account of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c; and

C.     Award the State of Florida its costs and grant such other relief as the Court may deem just and proper.

18

## COUNT TWO: DECLARATORY JUDGMENT – CONSTITUTIONAL AMENDMENTS PROPOSED BY INITIATIVE

64.     The State of Florida realleges, adopts, and incorporates by reference paragraphs 1 through 55 above.

65.     The covered changes to section 100.371, Florida Statutes, were adopted for the purpose of 1) clarifying the signature verification responsibilities of county supervisors of elections; 2) repealing statutory language related to signature revocation that has been judicially invalidated; and 3) ensuring that constitutional amendments proposed by initiative demonstrate significant contemporaneous support for the proposed changes. The covered changes were not adopted for any discriminatory purpose.

66.     The covered changes to section 101.371, Florida Statutes, when compared to Florida's existing or "benchmark" practices, do not lead to a "retrogression" in the position of racial minorities in that they do not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

67.     The covered changes to section 101.371, Florida Statutes, accordingly have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

68.     The covered changes to section 101.371, Florida Statutes, do not and will not prohibit any citizen of the United States from electing his or her preferred candidate of choice.

69.     The covered changes to section 101.371, Florida Statutes, apply uniformly to all Floridians regardless of race, color, or membership in a language minority.

70.     The covered changes to section 101.371, Florida Statutes, do not result in any discriminatory effect that is statistically significant.

71.     The State of Florida is entitled to a judgment that the covered changes to section 101.371, Florida Statutes, neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, and that Florida's covered jurisdictions may administer these covered changes without further delay.

WHEREFORE, the State of Florida respectfully requests that this Court:

A.      Convene a three-judge district court to hear the matters raised in this Complaint;

B.      Enter a declaratory judgment that the covered changes to section 101.371, Florida Statutes, neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority and may be administered by Florida's covered jurisdictions without impediment on account of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c; and

C.      Award the State of Florida its costs and grant such other relief as the Court may deem just and proper.

## COUNT THREE: DECLARATORY JUDGMENT – CHANGE OF ADDRESS

72.     The State of Florida realleges, adopts, and incorporates by reference paragraphs 1 through 55 above.

73.     The covered changes to section 101.045, Florida Statutes, were adopted for the purpose of preventing fraudulent voting by a single elector casting ballots in more than one county. The covered changes were not adopted for any discriminatory purpose.

74.     The covered changes to section 101.045, Florida Statutes, when compared to Florida's existing or "benchmark" practices, do not lead to a "retrogression" in the position of

racial minorities in that they do not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

75. The covered changes to section 101.045, Florida Statutes, accordingly have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

76. The covered changes to section 101.045, Florida Statutes, do not and will not prohibit any citizen of the United States from electing his or her preferred candidate of choice.

77. The covered changes to section 101.045, Florida Statutes, apply uniformly to all Floridians regardless of race, color, or membership in a language minority.

78. The covered changes to section 101.045, Florida Statutes, do not result in any discriminatory effect that is statistically significant.

79. The State of Florida is entitled to a judgment that the covered changes to section 101.045, Florida Statutes, neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, and that Florida's covered jurisdictions may administer these covered changes without further delay.

WHEREFORE, the State of Florida respectfully requests that this Court:

A. Convene a three-judge district court to hear the matters raised in this Complaint;

B. Enter a declaratory judgment that the covered changes to section 101.045, Florida Statutes, neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority and may be administered by Florida's covered jurisdictions without impediment on account of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c; and

C.     Award the State of Florida its costs and grant such other relief as the Court may deem just and proper.

### COUNT FOUR: DECLARATORY JUDGMENT – EARLY VOTING

80.     The State of Florida realleges, adopts, and incorporates by reference paragraphs 1 through 55 above.

81.     The covered changes to section 101.657, Florida Statutes, were adopted for the purpose of expanding access to early voting and providing each supervisor of elections additional flexibility regarding the scheduling of early voting. The covered changes were not adopted for any discriminatory purpose.

82.     The covered changes to section 101.657, Florida Statutes, when compared to Florida's existing or "benchmark" practices, do not lead to a "retrogression" in the position of racial minorities in that they do not have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

83.     The covered changes to section 101.657, Florida Statutes, accordingly have neither the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority.

84.     The covered changes to section 101.657, Florida Statutes, do not and will not prohibit any citizen of the United States from electing his or her preferred candidate of choice.

85.     The covered changes to section 101.657, Florida Statutes, apply uniformly to all Floridians regardless of race, color, or membership in a language minority.

86.     The covered changes to section 101.657, Florida Statutes, do not result in any discriminatory effect that is statistically significant.

87.   The State of Florida is entitled to a judgment that the covered changes to section 101.657, Florida Statutes, neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority under Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c, and that Florida's covered jurisdictions may administer these covered changes without further delay.

WHEREFORE, the State of Florida respectfully requests that this Court:

D.   Convene a three-judge district court to hear the matters raised in this Complaint;

E.   Enter a declaratory judgment that the covered changes to section 101.657, Florida Statutes, neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority and may be administered by Florida's covered jurisdictions without impediment on account of Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c; and

F.   Award the State of Florida its costs and grant such other relief as the Court may deem just and proper.

Respectfully submitted,

**DANIEL E. NORDBY**
General Counsel
Fla. Bar No. 014588
Daniel.Nordby@dos.myflorida.com
**ASHLEY E. DAVIS**
Assistant General Counsel
Fla. Bar No. 48032
Ashley.Davis@dos.myflorida.com
Florida Department of State
R.A. Gray Building
500 S. Bronough Street
Tallahassee, Florida 32399-0250
850-245-6536

*Counsel for Plaintiff*

23