UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF FLORIDA,<br><br>    Plaintiff,<br><br>    v.<br><br>UNITED STATES OF AMERICA, and ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States,<br><br>    Defendants,<br><br>KENNETH SULLIVAN, *et al.*,<br><br>    Defendant-Intervenors. | Civil Action No. 11-01428<br>(CKK) (MG) (ESH) |

**MEMORANDUM OPINION**
(October 28, 2011)

Plaintiff, the State of Florida ("Florida"), brings this civil action against Defendants, the United States of America and the Attorney General of the United States (together, the "United States"), seeking (i) judicial preclearance of recent changes to Florida's election laws under Section 5 of the Voting Rights Act of 1965 (the "VRA"), 42 U.S.C. § 1973c, or (ii) barring such preclearance, a declaration that the VRA's preclearance requirement and underlying coverage formula are unconstitutional. Several parties have been granted leave to intervene permissively as defendants, including registered Florida voters who are members of racial and language minority groups and organizations that have a special interest in the administration of Florida's election laws (collectively, "Defendant-Intervenors").

Currently before the Court is Florida's [41] Motion to Expedite. Filed on October 18, 2011, Florida's motion asks the Court to set an expedited schedule for the resolution of this

action. That schedule would have the parties conduct discovery, brief motions for summary judgment, and submit proposed findings of fact and conclusions of law within the next seven weeks, in advance of Florida's presidential preference primary on January 31, 2012. It would then have the Court conduct any evidentiary hearings, hear argument, and render a decision before the same deadline. The United States and Defendant-Intervenors oppose Florida's motion and jointly request that the Court instead adopt their proposal for a less onerous but nonetheless accelerated schedule. Upon consideration of the parties' submissions, the relevant authorities, and the record as a whole, the Court will DENY-IN-PART Florida's [41] Motion to Expedite. The Court also declines at this time to adopt the alternative schedule proposed by the United States and Defendant-Intervenors. The Court will instead hold a scheduling conference before finalizing an expedited schedule for further proceedings.

## I. BACKGROUND

The VRA prohibits any "voting qualification or prerequisite to voting or standard, practice, or procedure" that is "imposed or applied . . . in a manner which results in a denial or abridgment of the right of any citizen of the United States to vote on account of race or color," 42 U.S.C. § 1973(a), or membership in a "language minority group," *id.* § 1973b(f)(2).[1] This action focuses on the VRA's preclearance requirement. Under Section 5 of the VRA, any covered jurisdiction seeking to implement a change to its voting standards, practices, or procedures must first demonstrate that the change "neither has the purpose nor will have the effect of denying or abridging the right to vote on account of race or color," *id.* § 1973c(a), or membership in a

---

[1] "'[L]anguage minority group' means persons who are American Indian, Asian American, Alaskan Natives or of Spanish heritage." 42 U.S.C. § 1973*l*(c)(3).

"language minority group," *id.* § 1973b(f)(2).  Jurisdictions may seek preclearance from the Attorney General or a three-judge panel of this Court.  *See id.* § 1973c(a).  When administrative preclearance is sought, the Attorney General has a default period of sixty days to approve the proposed changes, interpose an objection, or request additional information.  *See id.*; 28 C.F.R. §§ 51.37, 51.41, 51.44.

Five Florida counties—specifically, Collier, Hardee, Hendry, Hillsborough, and Monroe Counties (collectively, the "Covered Counties")—have been designated by the Attorney General as "covered" jurisdictions under Section 4(b) of the VRA, 42 U.S.C. § 1973b(b).  Accordingly, Florida may not implement any change to its voting standards, practices, or procedures in the Covered Counties unless and until it obtains administrative or judicial preclearance.

On May 19, 2011, the Governor of Florida signed into law Florida House Bill 1355 (the "Act"), codified at Chapter 2011-40, Laws of Florida, an omnibus election law making several changes to the Florida Election Code and other Florida statutes.  Three weeks later, on June 9, 2011, Florida commenced the administrative preclearance process on behalf of the Covered Counties by submitting the Act to the Attorney General for his review.  Florida did not request expedited administrative review.  *See* 28 C.F.R. § 51.34(b) ("When a submitting authority demonstrates good cause for expedited consideration the Attorney General will attempt to make a decision by the date requested.").

On July 29, 2011, fifty days into the administrative review process, Florida withdrew from the Attorney General's consideration four changes that had received heightened attention during the review process.  Summarily stated, those four changes address: (1) the procedures governing third-party voter registration organizations; (2) the time frame during which signatures for citizen

3

initiatives for constitutional amendments are valid; (3) election-day polling place procedures for voters who have moved from the voting precinct in which they are registered to a precinct in a different county; and (4) early voting procedures, including the duration of the early voting period (collectively, the "Four Changes"). Following Florida's unilateral withdrawal of the Four Changes, the Attorney General proceeded to review the remainder of the Act's changes and precleared those changes on August 8, 2011, within the sixty-day default review period.

On August 1, 2011, well over two months after the Act became effective, Florida commenced this action seeking judicial preclearance of the Four Changes. *See* Compl. for Declaratory J., ECF No. [1]. Florida made no request for expedited consideration of the action at that time. Though it states that it provided the United States with a courtesy copy of its anticipated complaint earlier, Florida took three weeks to formally serve the United States with process. *See* Aff. of Service, ECF No. [7]; Aff. of Service, ECF No. [8].

On September 30, 2011, Florida announced that it had selected January 31, 2012 as the date for its presidential preference primary election. *See Presidential Preference Primary Date Selection Committee Selects January 31, 2012* (Sept. 30, 2011), http://www.dos.state.fl.us/news/communications/pressRelease/pressRelease.aspx?id=538. The United States avers, and Florida does not dispute, that Florida could have instead selected a date as late as the first week of March, 2012. *See id.*

On October 11, 2011, Florida filed an amended complaint to add claims for the first time challenging the constitutionality of the VRA's preclearance requirement and underlying coverage formula. *See* First Am. Compl. for Declaratory J., ECF No. [39]. On October 24, 2011, with the United States' and Defendant-Intervenors' consent, Florida sought leave to amend its complaint a

4

second time to include a request for judicial preclearance of a state regulation adopted on October 13, 2011 to implement one of the Four Changes.  *See* Consent Mot. for Leave to Amend the Compl. and P. & A. in Supp., ECF No. [52].  The Court granted such leave on October 25, 2011, *see* Min. Order (Oct. 25, 2011), and Florida's Second Amended Complaint remains the operative iteration of the complaint in this action, *see* Second Am. Compl. for Declaratory J., ECF No. [54].

On October 18, 2011, nearly five months after the Act became effective and two-and-a-half months after Florida commenced this action, Florida filed the pending Motion to Expedite.  *See* Pl.'s Mot. to Expedite and Stmt. of P. & A. in Supp. ("Pl.'s Mem."), ECF No. [41].  The Court set an expedited briefing schedule "[i]n order to permit a prompt ruling on the motion."  Min. Order (Oct. 19, 2011).  Consistent with that schedule, the United States and Defendant-Intervenors filed their oppositions on October 24, 2011.  *See* United States' Resp. to Florida's Mot. to Expedite and the United States' Req. for a Scheduling Conference ("United States' Opp'n"), ECF No. [50]; Def.-Intervenors' Joint Mem. in Opp'n to Pl.'s Mot. to Expedite ("Def.-Intervenors' Opp'n"), ECF No. [51].  Florida filed its reply on October 26, 2011.  *See* Pl.'s Reply in Supp. of Mot. to Expedite ("Pl.'s Reply."), ECF No. [53].  In an exercise of its discretion, the Court finds that holding oral argument on the motion would not assist the Court in rendering its decision.  *See* LCvR 7(f) (providing that the allowance of an oral hearing on a motion "shall be within the discretion of the court").  Accordingly, the motion is now ripe for a decision.

## II.  LEGAL STANDARD

It is well established that district courts enjoy broad discretion when deciding case management and scheduling matters, *see, e.g.*, *In re Vitamins Antitrust Class Actions*, 327 F.3d 1207, 1210 (D.C. Cir. 2003); *McSheffrey v. Exec. Office for U.S. Attorneys*, No. 00-5268, 2001 WL 674640, at *1 (D.C. Cir. May 4, 2001) (*per curiam*), a discretion that extends to determining

5

how and in what order cases should be heard and determined.

### III. DISCUSSION

Through its [41] Motion to Expedite, Florida asks the Court to set an expedited schedule for the resolution of this action that would have the parties conduct discovery, brief motions for summary judgment, and submit proposed findings of fact and conclusions of law within the next seven weeks, in advance of Florida's presidential preference primary on January 31, 2012. *See* Pl.'s Mem. at 3. Under Florida's proposed schedule, all fact and expert discovery would have to be completed within 28 days, in the period extending from November 7, 2011 to December 5, 2011; motions for summary judgment addressing Florida's constitutional claims would be filed on November 22, 2011 and fully briefed by December 13, 2011; and proposed findings of fact and conclusions of law relating to Florida's request for judicial preclearance would be filed on December 12, 2011, with responses due a week later on December 19, 2011. *See id.*; Pl.'s Reply at 2 n.1. So far as the Court can tell, Florida would expect a final decision from this Court by early January, 2012, *see* Pl.'s Mem. at 3 n.*, leaving the Court somewhere between two and three weeks to hold hearings if required to resolve disputed questions of fact, to decide the merits of the complex statutory and constitutional questions likely to be raised by the parties in this action, and to draft an opinion addressing those weighty questions. The Court finds this extraordinarily abbreviated schedule to be unworkable.

First, and perhaps most important, compliance with Florida's abbreviated schedule would have a deleterious effect on the parties' ability to marshal evidence in support of their positions and to crystallize those positions for the Court's consideration. Most notably, Florida's proposal would allocate only 28 days for the completion of all fact and expert discovery, would have the parties begin briefing Florida's constitutional claims within the discovery period, and would then

6

afford the parties just one week after the close of discovery to assimilate all the information gathered before addressing the merits of Florida's request for judicial preclearance. This action will turn on factual issues that can only be illuminated through discovery, and Florida concedes that it is "unlikely . . . that there [will be] no material facts in dispute with respect to [its] preclearance claims." Pl.'s Reply at 2 n.1. The parties need sufficient time to request, gather, and analyze evidence bearing on the question of whether the Four Changes have the purpose or effect of abridging the right to vote on account of race, color, or membership in a language minority group. Expert discovery may also be necessary to digest statistical data and to present it in a clear and reliable manner to the Court.

The United States avers, and Florida does not dispute, that much of the evidence relevant to Florida's request for judicial preclearance is likely to be in Florida's exclusive possession, custody, or control. *See* United States' Opp'n at 7. Although the Court recognizes that Florida may have produced some information during the administrative preclearance proceedings, *see generally* Pl.'s Reply at 8 n.3, the Court accepts the United States' representation that it requires additional "information to form a position as to whether the proposed changes will have a discriminatory effect on minority voters," United States' Opp'n at 2, including statistical data relating to the discriminatory impact, if any, of truncating the early voting period and placing new requirements on third-party voter registration organizations, *id.* at 7 n.3. Furthermore, the parties may wish to conduct a limited number of depositions, something that should await the production of documentary evidence.[2] *See* Def.-Intervenors' Opp'n at 7. Under these circumstances, the Court finds that the abbreviated schedule proposed by Florida would run an

---

[2] The Court expresses no opinion as to whether depositions will ultimately be appropriate in this action.

unacceptable risk of depriving the United States and Defendant-Intervenors of a "full opportunity to conduct discovery." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986).

Second, Florida's proposed schedule would have the parties simultaneously brief Florida's argument that the preclearance requirement and underlying coverage formula are unconstitutional and its alternative request for judicial preclearance under Section 5 of the VRA.[3] Florida concedes that substantially similar constitutional claims were recently resolved by United States District Judge John D. Bates in a 151-page memorandum opinion issued in an unrelated action. *See Shelby Cnty., Ala. v. Holder*, __ F. Supp. 2d __, 2011 WL 4375001 (D.D.C. Sept. 21, 2011). Judge Bates' decision is now on appeal to the United States Court of Appeals for the District of Columbia Circuit and is being decided "on an expedited schedule," Pl.'s Reply at 7, with oral argument scheduled for January 19, 2012, *see* Order, *Shelby Cnty., Ala. v. Holder*, No. 11-5256 (D.C. Cir. Oct. 7, 2011), Doc. No. [1334101]. The Court of Appeals' decision in that action will be binding on this Court, and the parties agree that the decision will at the very least substantially narrow the constitutional issues that need to be decided in this action. *See* United States' Opp'n at 7-8; Def.-Intervenors' Opp'n at 7-8; Pl.'s Reply at 7. Accordingly, at this point

---

[3] According to Florida, its request for judicial preclearance and its constitutional claims are "inseparable," Pl.'s Reply at 3, because "serious constitutional questions may lead the Court to choose between competing interpretations of the key statutory provisions in the course of resolving the preclearance claims," *id.* at 4. However, regardless of whether constitutional considerations may affect the Court's resolution of Florida's request for judicial preclearance, Florida has asserted two stand-alone constitutional claims that are undoubtedly independent from its request for judicial preclearance. Florida's constitutional claims would have this Court conclude that the VRA's preclearance requirement is unconstitutional and cannot be enforced, relief that is inconsistent with Florida's request for preclearance. There is a marked difference between deciding the constitutionality of the VRA's preclearance requirement and interpreting the statute to determine whether Florida is entitled to preclearance. Indeed, Florida's suggestion that its statutory and constitutional claims are "inseparable" is inconsistent with its own proposal for two separate rounds of briefing, one addressing its constitutional claims and a second addressing its request for judicial preclearance. *See id.* at 2 n.1.

it would be an inefficient use of this Court's and the litigants' scarce time and resources to double-track the preclearance issues with the complex constitutional questions raised by Florida.

Moreover, "judging the constitutionality of an Act of Congress is 'the gravest and most delicate duty that [a federal court] is called on to perform,'" *Nw. Austin Mun. Util. Dist. No. One v. Holder*, __ U.S. __, 129 S. Ct. 2504, 2513 (2009) (quoting *Blodgett v. Holden*, 275 U.S. 142, 147-48 (1927) (Holmes, J., concurring)), and courts should "avoid reaching constitutional questions in advance of the necessity of deciding them," *Lyng v. Nw. Indian Cemetery Protective Ass'n*, 485 U.S. 439, 445 (1988). These principles counsel strongly against resolving Florida's constitutional claims before it actually becomes necessary to do so. If the Court finds that Florida is entitled to preclearance of the Four Changes, its alternative contention that the VRA's preclearance requirement and underlying coverage formula are unconstitutional would effectively be mooted, or at the very least greatly simplified. In accordance with the doctrine of constitutional avoidance, the Court is disinclined to reach the merits of Florida's constitutional claims before it has had an opportunity to evaluate the merits of Florida's request for judicial preclearance. Accordingly, the Court intends to have the parties brief Florida's request for judicial preclearance before addressing Florida's constitutional claims in a separate round of briefing.

Third, the record reveals that Florida has not pressed the urgency of expeditiously obtaining preclearance until it filed the instant motion. After the Act became effective, Florida waited three weeks before commencing administrative preclearance proceedings on behalf of the Covered Counties and, when it did so, Florida did not seek expedited administrative review. Then, fifty days into the default sixty-day review period, Florida unilaterally withdrew the Four

Changes from the Attorney General's consideration.[4]  When Florida commenced this action, it did not request expedited consideration from this Court.  In fact, it waited three weeks before formally serving the United States with process.  Florida did not file the pending Motion to Expedite until October 18, 2011, nearly five months after the Act became effective and two-and-a-half months after Florida commenced this action.  This timeline belies Florida's contention that expedition of this action is essential.  Moreover, had Florida sought expedition from the start, it might have obtained a disposition by the deadline it seeks without prejudicing the defendants.  At this point, however, Florida's schedule will unfairly prejudice the opposing parties.

Fourth, Florida's proposed schedule is structured around its desire to secure a final ruling in advance of its presidential preference primary election on January 31, 2012.  However, the United States avers, and Florida does not dispute, that Florida could have selected a date as late as the first week of March, 2012 to hold its primary election.  *See* United States' Opp'n at 8 n.5.  Thus, the present state of affairs is, at least to an extent, a matter of Florida's own choosing.  The Court is neither willing to rush to judgment on the complex statutory and constitutional issues raised in this case nor inclined to impose unreasonable litigation burdens upon the United States and Defendant-Intervenors simply because Florida chose to schedule its primary election early in the election season.

Fifth, and finally, despite its repeated references to "legal uncertainty and significant administrative burdens," Pl.'s Reply at 7, Florida greatly exaggerates the prejudice it would

---

[4] Florida has not convincingly explained why, if it believed expedition was essential, it decided to change course and seek judicial preclearance from this Court.  Congress created a presumption that the administrative preclearance process would conclude within a sixty-day period because it wanted "to provide a speedy alternative method of compliance" and to avoid "unduly delay[ing] the implementation of validly enacted, nondiscriminatory state legislation." *Morris v. Gressette*, 432 U.S. 491, 504 (1977).

suffer if it is not granted preclearance in advance of the presidential preference primary on January 31, 2012. Florida is not precluded from implementing the Four Changes throughout the state with the exception of the five Covered Counties, and it has already taken steps to do so. For this reason, Florida's reliance upon cases in which courts have exercised their broad discretion to permit expedited proceedings in the context of statewide redistricting plans is misplaced. Nor can Florida rely on its separate contention that it has been prejudiced because it has been "exposed . . . to litigation seeking to prevent the implementation of these voting changes," *id.* at 5, when it concedes that all past litigation has already been resolved in its favor and any future litigation remains speculative.

For the foregoing reasons, the Court finds Florida's proposed schedule unworkable. Nonetheless, the Court considers some expedition appropriate and will adopt a schedule that permits the resolution of this action in a prompt but reasonable manner. At this time, the Court is inclined to fashion a schedule largely tracking the one jointly proposed by the United States and Defendant-Intervenors, including requiring the parties to address Florida's request for judicial preclearance before addressing Florida's constitutional claims. However, because the Court requires additional information before finalizing an expedited schedule for further proceedings, the Court will hold a prompt scheduling conference with the parties.

/
/
/
/
/
/

## IV. CONCLUSION

For the reasons set forth above, the Court will DENY-IN-PART Florida's [41] Motion to Expedite. An appropriate Order accompanies this Memorandum Opinion.

Date: October 28, 2011

/s/
**MERRICK B. GARLAND**
United States Circuit Judge

/s/
**ELLEN S. HUVELLE**
United States District Judge

/s/
**COLLEEN KOLLAR-KOTELLY**
United States District Judge