**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF FLORIDA, <br><br> Plaintiff, <br><br> v. <br><br> UNITED STATES OF AMERICA and ERIC H. HOLDER, JR., in his official capacity as Attorney General of the United States, <br><br> Defendants, <br><br> v. <br><br> KENNETH SULLIVAN, *et. al.*, <br><br> Defendant-Intervenors | Civil No. 1:11-cv-01428-CKK-MG-ESH |

**FLORIDA'S RESPONSE TO THE**
**COURT'S ORDER OF JULY 3, 2012**

Florida respectfully submits this statement in response to the Court's order of July 3, 2012, requesting supplemental briefing on two questions:

1. **If this court were to preclear the early voting changes in Fla. Stat. § 101.657(1)(d) (2011), what is the benchmark, in terms of specific days and hours of early voting, by which the covered counties' early voting plans would be judged when they are submitted for section 5 preclearance?**

Florida's position is that the practice currently being used in the Covered Counties would be the benchmark against which the Covered Counties' early voting plans would be judged. As "the most recent practice that was both precleared and 'in force or effect,'"

1

*Riley v. Kennedy*, 553 U.S. 406, 421 (2008), the days and hours currently being used in each Covered County form the benchmark. Here, each Covered County offers early in-person voting for eight hours per day over the same 12-day period—Monday through Saturday for two consecutive weeks.

Nevertheless, if this Court were to preclear Fla. Stat. § 101.657(1)(d) as amended in 2011, as the question assumes, then the Court necessarily would have found that at least *one* set of facts exists under which a Covered County could choose hours that would not retrogress from the benchmark practice. Had the Court not so found, it could not have precleared the change. *See* Florida's Position on the Court's Authority to Grant Conditional Preclearance, Dkt. 131 at 5 n.3 (June 29, 2012). Thus, the decision to grant judicial preclearance would mean that a Covered County that thereafter seeks preclearance for the full 96 hours available under the new law would be entitled to preclearance unless it chooses particular hours that were found to be discriminatory in purpose or effect.

2.     **If this court were to preclear the early voting changes in Fla. Stat. § 101.657(1)(d) (2011), and a covered county then submits its specific proposal for early voting hours, and this court declines to preclear that proposal on a finding that it would result in retrogression, what specific days and hours of early voting would that covered county then be required to offer?**

In the situation described, Florida's position is that the denial of preclearance would mean that the benchmark practice—12 days of early voting, 8 hours per day, over consecutive six-day periods—would be offered. Once again, that is the "most recent

2

practice that was both precleared and 'in force or effect.'" *Riley*, 553 U.S. at 421. No new practice would have had "force" or have taken "effect" for the Covered Counties because the counties would not have had their choice of hours and times precleared. Thus, the old benchmark remains in place and would be used until their choice of hours and days under the new law is precleared.[1]

Florida notes, however, that this is a highly unlikely scenario. First, election supervisors in each of the Covered Counties have indicated that they will use whatever number of hours are needed to serve the voters' needs, so a finding of retrogression is extremely unlikely. Proposed Findings of Fact and Conclusions of Law, Dkt. 91 (April 16, 2012) (PFF ¶ 91). And if they take advantage of the full 96 hours available to them under the new law, then the Covered Counties should easily obtain preclearance. *See supra*.

Second, the State ultimately has the power to compel the Covered Counties to take steps necessary to obtain preclearance for a voting change. It is the Secretary's "responsibility" to "[p]rovide written direction and opinions to the supervisors of elections on the performance of their official duties with respect to the Florida Election Code or rules adopted by the Department of State." Fla. Stat. § 97.012(16). The Secretary also has the authority to "[b]ring and maintain such actions at law or in equity by mandamus or injunction to enforce the performance of any duties of a county

---

[1] The Court's question assumes that the Covered Counties would seek judicial preclearance. However, because this would be a separate preclearance action, *see* United States' Response to Section 3(C) of the Court's June 22, 2012 Order, Dkt. 130 at 2-3 (June 29, 2012), it could be brought either administratively or judicially, *see* 42 U.S.C. § 1973c(a); *see also* 28 C.F.R. § 51.10.

supervisor of elections or any official performing duties with respect to chapters 97-102 and chapter 105 or to enforce compliance with a rule of the Department of State adopted to interpret or implement any of those chapters." Fla. Stat. § 97.012(14); *see also id*. § 97.012(14)(b) ("When the secretary files an action under this section and not more than 60 days remain before an election as defined in § 97.021 … the court, including an appellate court, shall set an immediate hearing, giving the case priority over other pending cases."). Finally, in extraordinary circumstances, "the governor may suspend from office … any county officer … for … neglect of duty … and may fill the office by appointment for the period of suspension." Fla. Const. art. IV, § 7(a).

Third, this circumstance can arise only once (if at all). Once the new law has taken effect and a Covered County obtains preclearance for particular hours and an election is held under it, that becomes the new benchmark and any future changes will be measured against it.

Respectfully submitted,

/s/ William S. Consovoy

Daniel E. Nordby
Ashley E. Davis
FLORIDA DEPARTMENT OF STATE
R.A. Gray Building
500 S. Bronough Street
Tallahassee, FL 32399-0250
Tel: 850-245-6536

William S. Consovoy* (D.C. Bar 493423)
Brendan J. Morrissey (D.C. Bar 973809)
J. Michael Connolly  (D.C. Bar 995815)
WILEY REIN LLP
1776 K Street, NW
Washington, DC  20006
Tel.: (202) 719-7000
Fax: (202) 719-7049

Dated: July 6, 2012

*Counsel of Record*