**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF FLORIDA,<br><br>            Plaintiff,<br>      v.<br><br>UNITED STATES OF AMERICA, *et al.*<br><br>            Defendants. | No. 1:11-cv-1428-CKK-MG-ESH |

**DEFENDANT-INTERVENORS' SUPPLEMENTAL BRIEF REGARDING PRECLEARANCE STANDARDS FOR ENABLING LEGISLATION**

Defendant-Intervenors respectfully submit the following statement in response to the Court's July 3, 2012 Order requiring briefing on Florida's contention, as to the Early Voting Changes, that if "there is any set of facts under which a jurisdiction can implement enabling legislation in a non-retrogressive fashion, the enabling legislation is entitled to preclearance." For the following reasons, Florida's contention is incorrect.

The starting point in applying Section 5 to the Early Voting Changes is distinguishing the Changes' mandatory and enabling components. The mandatory component has two aspects: first, HB1355 requires counties to eliminate the first five days of the existing early-voting period, and to add a day by conducting early voting on both weekend days two weekends before an election; and second, HB1355 denies counties their pre-existing discretion to conduct early voting on the Sunday two days before an election ("last Sunday early voting"). The enabling component would grant counties the discretion to select their early-voting hours on each of the permitted eight days; accordingly, if this Court preclears the Early Voting Changes, the Covered

1

Counties would have an ongoing obligation to seek preclearance for the early-voting hours they select in the future. 28 C.F.R. §51.15 (enabling legislation); *cf.* 28 C.F.R. § 51.17(b) (Section 5 covers discretionary setting of an election schedule). To obtain preclearance now, Florida must demonstrate that neither HB1355's mandatory aspects nor its enabling component have a discriminatory purpose or a retrogressive effect.

Retrogression: The specific retrogression questions before this Court are as follows: (a) Is the reduction in early-voting days retrogressive regardless of the number of early-voting hours the Covered Counties might select; and (b) if the Court finds that a reduction in days may not be retrogressive depending on the hours selected (*e.g.*, if 96 hours were selected), are the Early Voting Changes still retrogressive?[1]

a. As the Court is aware, Intervenors and the United States contend that the reduction in days *is* retrogressive regardless of the hours selected. In that regard, the evidence demonstrates that African-Americans disproportionately rely on early voting, and that the reduction in days (notwithstanding the allowance of more hours per day) would limit the opportunity to vote early. FF 43B, 97A-97C, 98A-98P, 113A-113B, 116A.[2] Florida contends, incorrectly, that there is no disproportionate reliance by race

---

[1] The change eliminating the discretion to conduct "last Sunday early voting" is not at issue in the retrogression analysis since the Covered Counties have not conducted early voting on that day. *See Texas v. United States*, 831 F. Supp. 2d 244, 265 (D.D.C. 2011) (retrogression standard does not protect potential future gains in minority electoral opportunity). However, as discussed *infra*, this aspect of the Early Voting Changes is at issue in the "purpose" analysis.

[2] Citations are to the U.S. and Defendant-Intervenors Joint Submission Concerning Proposed Findings of Fact and Conclusions of Law (doc. 95), except where the citations are noted as being to the United States' and Intervenors' reply document (doc. 99).

(FF 99A-99C, 99E, 104A, 106A, & responses to FF 99-115, 116; Reply FF 97A-98P, 99A-99E, 104A-106A) but – notably – has not offered any evidence that the reduced days could offer the same opportunity to vote early as is currently offered.  FF 99D, responses to FF 114-115; Reply FF 42A-45F, 97A-98P, 113A-116C.

      b.  If, however, the Court concludes that the Early Voting Changes would allow each of the Covered Counties to adopt early-voting hours that would not be retrogressive – despite the reduction in early-voting days – that would provide an adequate basis on which to conclude that the Changes are not retrogressive in effect.[3]  The remaining issue would concern the mechanism for ensuring that each Covered County would, in fact, adopt non-retrogressive hours, *i.e.*, would the retrogression benchmark preclude the Counties from selecting hours that would render the Early Voting Changes retrogressive (or would the Counties' actual selections need to be reviewed simultaneously with the Early Voting Changes)?  Intervenors address this issue in their other brief filed today.

      <u>Discriminatory purpose</u>.  As is true for all voting changes subject to Section 5 review, Florida must demonstrate not only that the Early Voting Changes are non-retrogressive, but also that they do not have a discriminatory purpose.  42 U.S.C. § 1973c(a).  In this regard, even if this Court were to conclude that the Early Voting Changes are not retrogressive, that would not resolve the question whether the changes lack a discriminatory purpose.  42 U.S.C. § 1973c(c) (Section 5 prohibits "any

---

[3] Enabling legislation that requires multiple jurisdictions to adopt additional voting changes, and which permits some to adopt a non-retrogressive practice but which precludes others from doing so, could not be deemed non-retrogressive since a voting change may not be precleared if it is retrogressive in any respect.

discriminatory purpose"); *Reno v. Bossier Parish School Board*, 528 U.S. 320, 332 (2000) (intent to retrogress violates Section 5 regardless of whether the enacted change is retrogressive in effect).

As with the retrogression analysis, the "purpose" analysis must examine both the mandatory and enabling components of the Early Voting Changes. The evidence here demonstrates that Florida has not shown an absence of discriminatory purpose as to either of the mandatory aspects of the Changes.[4]

a. With regard to the reduction in early-voting days, the evidence establishes that the Early Voting Changes had a retrogressive purpose: the Legislature knew that African-Americans relied to a high degree on early voting in the 2008 Presidential election (FF 48D); the reduction in the number of days is retrogressive (*see* FF cited, *supra*, at 2-3); no election officials proposed the reduction in days, election supervisors strongly opposed it, and the number of early-voting days was not a problem (FF 9A-9C, 9F-9I, 42A-42D); the Legislature's stated justifications (the alleged low usage of early voting during the first week, and the alleged efficiency and cost savings) have no basis in fact and were pretextual (FF 9E, 45A-45F, response to FF 46); and opponents asserted during the enactment process that the Changes were racially discriminatory (FF 48A-48C). *See generally* CL 107 (applying *Arlington Heights* factors to the evidence).

Moreover, even if the Court were to conclude that the reduction in days is not retrogressive in its effect, the Court still should conclude that the absence of any legitimate, non-racial justification for the reduction in days precludes Florida from

---

[4] There is no "purpose" dispute as to the enabling component considered by itself.

4

satisfying its burden of demonstrating that the Legislature acted without a prohibited purpose to retrogress minority electoral participation.

      b. With regard to the elimination of counties' discretion to conduct "last Sunday early voting," the evidence demonstrates that: the minority community was successfully implementing a "souls to the polls" program on that last Sunday (FF 116B-116C); this change was not proposed by Florida election officials (*see* FF cited, *supra*, at 4); and the Legislature had no legitimate, non-racial justification for this change. Responses to FF 43-44 & 46, 116B-116C.[5] In particular, the change is inconsistent with Florida's claim that the Legislature's goal in enacting the Early Voting Changes was to provide greater flexibility to supervisors of elections; and the Florida Legislature "could not have wanted to help SOEs by 'ensur[ing] that early voting would not be required on the last Sunday before Election Day' because the pre-2011 law did not include any such requirement." FF 46. Florida's failure to identify any non-racial justification for the elimination of counties' discretion to conduct "last Sunday early voting" precludes the State from satisfying its burden of showing the absence of a discriminatory purpose.

---

[5] The "last Sunday early voting" change is at issue in the "purpose" analysis for the following reasons: the "purpose" analysis concerns the purposes of the Florida Legislature as a whole (*see* Resp. to CL 6-7); Florida does not dispute that the Legislature's purposes with regard to the Early Voting Changes concerned early voting throughout the State; and some counties had been conducting "last Sunday early-voting." *See also Texas v. United States*, 831 F. Supp. 2d at 270, *quoting City of Pleasant Grove v. United States*, 479 U.S. 462, 471 (1987) ("'Section 5 looks not only to the present effects of changes, but to their future effects as well . . . . Likewise, an impermissible purpose under § 5 may relate to anticipated as well as present circumstances.'").

Respectfully submitted on July 6, 2012,

/s/ Randall C. Marshall
Randall C. Marshall
Julie A. Ebenstein
**American Civil Liberties Union Foundation of Florida, Inc.**
4500 Biscayne Blvd. Ste. 340
Miami, FL 33137
Tel: (786) 363-2700
Fax: (786) 363-1108
rmarshall@aclufl.org

Arthur B. Spitzer
**American Civil Liberties Union of the Nation's Capital**
1400 20th St. NW, Ste. 119
Washington, D.C. 20036
Tel: 202-457-0800
Fax: 202-452-1868
art@aclu-nca.org

M. Laughlin McDonald
**American Civil Liberties Union Foundation, Inc.**
230 Peachtree St. NW
Ste. 1440
Atlanta, GA 30303-1227
Tel: (404) 523-2721
lmcdonald@aclu.org

Estelle H. Rogers
**Project Vote**
1350 Eye St., NW, Ste. 1250
Washington, DC 20005
Tel: 202-546-4173 x.310
Fax: 202-629-3754
erogers@projectvote.org

*Counsel for the Sullivan Group*

/s/ Dale E. Ho
Debo P. Adegbile
Ryan P. Haygood
Dale E. Ho
Natasha M. Korgaonkar
**NAACP Legal Defense and Educational Fund, Inc.**
99 Hudson St., Ste. 1600
New York, NY 10013
Tel: (212) 965-2200
dho@naacpldf.org

*Counsel for the NAACP Group*

/s/ Ian L. Barlow
Jon M. Greenbaum
Mark A. Posner
**Lawyers' Committee for Civil Rights Under Law**
1401 New York Ave. NW
Ste. 400
Washington, D.C. 20005
Tel: (202) 662-8389
Fax: (202) 628-2858
mposner@lawyerscommittee.org

Daniel C. Schwartz
Rodney F. Page
Alec W. Farr
James J. Murphy
Daniel T. O'Connor
Nicholas S. Sloey
Ian L. Barlow
**Bryan Cave LLP**
1155 F St. NW, Ste. 700
Washington, D.C. 20004
Tel: (202) 508-6000
Fax: (202) 508-6200
dcschwartz@bryancave.com

Wendy Weiser
Diana Kasdan
Lee Rowland
**The Brennan Center for Justice at NYU School of Law**
161 Ave. of the Americas
Fl. 12
New York, NY 10013-1205
Tel: (646) 292-8310
Fax: (212) 463-7308
lee.rowland@nyu.edu

*Counsel for the NCLR Group*