**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| STATE OF FLORIDA,<br><br>    Plaintiff,<br><br> v.<br><br>UNITED STATES OF AMERICA, *et al.*<br><br>    Defendants. | No. 1:11-cv-1428-CKK-MG-ESH |

**DEFENDANT-INTERVENORS' SUPPLEMENTAL BRIEF REGARDING APPLICATION OF SECTION 5 TO EARLY VOTING HOURS CHANGES**

Defendant-Intervenors respectfully submit the following statement in response to the Court's July 3, 2012 Order requiring briefing on two related questions regarding the application of Section 5 to the Covered Counties' selection of early-voting hours if this Court were to preclear Florida's Early Voting Changes.

At the outset, Intervenors note that the answers to the Court's questions are not entirely free from doubt because the Early Voting Changes are in part mandatory and in part enabling (see discussion in companion brief filed today).  As a result, the Court's preclearance of the Early Voting Changes would mean, at least in their initial implementation phase, that the pre-2011 scheme would be only partially superseded: under state law, the Covered Counties would be required to conduct early voting over eight days instead of twelve, and would be denied the discretion to conduct early voting

on the Sunday two days before an election, but would not have a replacement scheme fully in effect until they adopt and obtain preclearance for their early-voting hours.

1. **"If this court were to preclear the early voting changes in Fla. Stat. § 101.657(d) (2011), what is the benchmark, in terms of specific days and hours of early voting, by which the covered counties' early voting plans would be judged when they are submitted for section 5 preclearance?"**

Intervenors' view is that the benchmark would be the pre-2011 scheme, *i.e.*, the opportunity that existed in each Covered County to vote through early, in-person voting conducted over a twelve-day period for eight hours a day, since that would be the last precleared scheme in force or effect in each County.  This benchmark, however, would be subject to an important caveat:  assuming that, in granting preclearance, this Court determines that the Early Voting Changes would allow the Covered Counties to implement non-retrogressive hours over the new eight-day early-voting period, that determination would be the starting point in evaluating the hours initially selected by each Covered County.  Thus, the retrogression analysis would compare the opportunity provided by each Covered County's selected hours (*i.e.*, both the number of hours and the particular periods of the day selected) to the opportunity provided under that County's pre-2011 scheme, subject to the proviso that each County necessarily would be conducting early voting only during the new eight-day period.[1]  In other words, the benchmark with this caveat would mean that, at a minimum, a Covered County that

---

[1] It is not unusual for a retrogression analysis to be constrained in one or more respects. For example, in evaluating whether a redistricting plan is retrogressive, Section 5 recognizes that the options available to the jurisdiction are those that comply with the one-person, one-vote requirement.  DOJ Guidance Concerning Redistricting Under Section 5 of the Voting Rights Act.  76 Fed. Reg. 7470, 7472 (Feb. 9, 2011).

adopts the maximum number of newly allowable hours (96) – with the hours spaced over appropriate periods of each early-voting day – could not be found to have adopted a retrogressive change.

Under the Attorney General's Procedures for the Administration of Section 5, the benchmark "normally . . . [is] the voting standard, practice, or procedure in force or effect at the time of the submission." 28 C.F.R. § 51.54. This definition, however, does not yield a clear answer in the situation hypothesized by the Court since, at the time the Counties would make and seek preclearance for their initial selection of hours, arguably neither the pre-2011 system nor a complete new system would be in force or effect.

On four occasions, the Supreme Court has addressed whether, for Section 5 purposes, a particular past voting practice should be deemed to have been "in force or effect," and therefore whether it served as the benchmark for determining if a voting change had occurred or if a change was retrogressive. *Riley v. Kennedy*, 553 U.S. 406 (2008); *Young v. Fordice*, 520 U.S. 273 (2007); *City of Lockhart v. United States*, 460 U.S. 125 (1983); *Perkins v. Matthews*, 400 U.S. 379 (1971). In *Riley*, the Court reviewed its prior decisions and concluded that "*Perkins* and *Lockhart* established that an election practice may be 'in force or effect' for § 5 purposes despite its illegality under state law if, as a practical matter, it was 'actually in effect.'" 553 U.S. at 424.

When each Covered County submits its initial selection of early-voting hours in the hypothetical situation posited here, it would appear that the only early voting scheme that could be deemed to previously have been "actually in effect" would be the pre-2011 scheme. Among the possible choices, it would be the only scheme ever to have been in

effect, and its unlawful status under precleared HB1355 would be irrelevant. It would not seem that the precleared provisions of HB1355 would qualify as being "actually in effect" since they could not, "as a practical matter," go into effect in a Covered County until the County makes its initial selection of hours and obtains preclearance for that change. Likewise, it would seem inappropriate to view the benchmark as being a combination of HB1355's eight early-voting days and the pre-2011 number of early-voting hours since no such "combo" scheme was ever "actually in effect."

Furthermore, treating the pre-2011 scheme as the benchmark (subject to the caveat noted above) would best effectuate the rationale for the retrogression standard. As this Court recently explained in *Texas v. United States*, "[t]he question of retrogressive effect under Section 5 looks at gains that have already been *realized* by minority voters and protects them from future loss." 831 F. Supp. 2d 244, 262 (D.D.C. 2011) (emphasis in original). The gains that minority voters in the Covered Counties actually have realized are defined by the opportunity afforded by the pre-2011 system, and thus that scheme should serve as the benchmark for judging retrogression in the hypothesized situation.[2]

---

[2] Once each County obtains preclearance for its initial selection of hours, that selection along with the precleared mandatory portion of the Early Voting Changes would thereafter constitute the retrogression benchmark in each Covered County.

2. **"If this court were to preclear the early voting changes in Fla. Stat. § 101.657(d) (2011), and a covered county then submits its specific proposal for early voting hours, and this court declines to preclear that proposal on a finding that it would result in retrogression, what specific days and hours of early voting would that covered county then be required to offer?"**

In the second hypothetical posited – *i.e.*, preclearance is denied for the early-voting hours initially selected by one or more of the Covered Counties – the most likely result would be that the affected county would go back to the drawing board and, guided by the rationale provided for the preclearance denial, adopt another set of early-voting hours and obtain preclearance for that.[3] In the unlikely circumstance that the initial selection of hours would be denied preclearance and no substitute set of hours then is adopted by the affected County, the County would be required under Section 5 to implement the last set of practices "in force or effect" which, for the reasons set forth above, would appear to be the pre-2011 scheme, notwithstanding its illegality under state law. *See Perkins v. Matthews*, 400 U.S. at 394-95 (Section 5 required city to implement ward method of election, notwithstanding its illegality under state law, because it was the method of election in "force or effect" under Section 5 and no change from that election method had been precleared).

---

[3] Once each County obtains preclearance for its initial selection of hours, a County that makes another selection thereafter and fails to obtain preclearance either would return to its precleared hours or make another selection and seek preclearance for that.

Respectfully submitted on July 6, 2012,

/s/ Randall C. Marshall
Randall Marshall
Julie Ebenstein
**American Civil Liberties Union Foundation of Florida, Inc.**
4500 Biscayne Blvd. Ste. 340
Miami, FL 33137
Tel: (786) 363-2700
Fax: (786) 363-1108
rmarshall@aclufl.org

Arthur B. Spitzer
**American Civil Liberties Union of the Nation's Capital**
1400 20th St. NW, Ste. 119
Washington, D.C. 20036
Tel: 202-457-0800
Fax: 202-452-1868
art@aclu-nca.org

M. Laughlin McDonald
**American Civil Liberties Union Foundation, Inc.**
230 Peachtree St. NW
Ste. 1440
Atlanta, GA 30303-1227
Tel: (404) 523-2721
lmcdonald@aclu.org

Estelle H. Rogers
**Project Vote**
1350 Eye St., NW, Ste. 1250
Washington, DC 20005
Tel: 202-546-4173 x.310
Fax: 202-629-3754
erogers@projectvote.org

*Counsel for the Sullivan Group*

/s/ Dale E. Ho
Debo P. Adegbile
Ryan P. Haygood
Dale E. Ho
Natasha M. Korgaonkar
**NAACP Legal Defense and Educational Fund, Inc.**
99 Hudson St., Ste. 1600
New York, NY 10013
Tel: (212) 965-2200
dho@naacpldf.org

*Counsel for the NAACP Group*

/s/ Ian L. Barlow
Daniel C. Schwartz
Alec W. Farr
James J. Murphy
Daniel T. O'Connor
Nicholas S. Sloey
Ian L. Barlow
**Bryan Cave LLP**
1155 F St. NW, Ste. 700
Washington, D.C. 20004
Tel: (202) 508-6000
Fax: (202) 508-6200
dcschwartz@bryancave.com

Jon M. Greenbaum
Mark A. Posner
**Lawyers' Committee for Civil Rights Under Law**
1401 New York Ave. NW
Ste. 400
Washington, D.C. 20005
Tel: (202) 662-8389
Fax: (202) 628-2858
mposner@lawyerscommittee.org

Wendy Weiser
Diana Kasdan
Lee Rowland
**The Brennan Center for Justice at NYU School of Law**
161 Ave. of the Americas
Fl. 12
New York, NY 10013-1205
Tel: (646) 292-8310
Fax: (212) 463-7308
lee.rowland@nyu.edu

*Counsel for the NCLR Group*