IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| STATE OF FLORIDA, <br><br> Plaintiff <br><br> v. <br><br> UNITED STATES OF AMERICA and ERIC H. HOLDER, Jr., in his official capacity as Attorney General of the United States, <br><br> Defendant. <br><br> FLORIDA STATE CONFERENCE OF THE NAACP, *et al.*, <br><br> Defendant-Intervenors, <br><br> KENNETH SULLIVAN, *et al.*, <br><br> Defendant-Intervenors, <br><br> and <br><br> NATIONAL COUNCIL OF LA RAZA, and LEAGUE OF WOMEN VOTERS OF FLORIDA, <br><br> Defendants-Intervenors. | NO. 1:11-CV-01428 <br> (CKK-MG-ESH) <br> THREE JUDGE COURT |

# UNITED STATES' RESPONSE TO THE QUESTION RELATED TO ENABLING LEGISLATION RAISED BY THE JULY 3, 2012 MINUTE ORDER

- 1 -

The United States respectfully submits the following response to the Court's July 3, 2012 Minute Order to respond to Florida's contention that if "there is any set of facts under which a jurisdiction can implement enabling legislation," such as the early voting changes, "in a non-retrogressive fashion, the enabling legislation is entitled to preclearance." July 3, 2012 Minute order.[1]

The statutory standard for evaluating all voting changes under Section 5 is whether the change has neither a discriminatory purpose nor will have a discriminatory effect. 42 U.S.C. § 1973c. The Attorney General's Procedures for the Administration of Section 5 set forth his application of the general Section 5 standard as well as his specific procedures regarding enabling changes. *See* 28 C.F.R. §§ 51.52(a) (identifying the standard that the Attorney General applies); 51.15(a) (specifying that as to enabling changes, preclearance of the enabling legislation does not exempt subsequent enactments from preclearance). The Attorney General is

---

[1] The State cites to *County Council of Sumter County v. United States*, 555 F. Supp. 694, 704 (D.D.C. 1983) and two Department letters, ECF Nos. 131-1 and 131-2, to support this contention. These citations discuss examples of Section 5 review of enabling legislation. *See* 28 C.F.R. § 51.15(a). In one case, the Department had previously precleared the State of Georgia's Municipal Election code, but objected to a county's adoption of a majority vote requirement pursuant to the provisions of that code. ECF No. 131-2. In the other cited submission, the Department objected to several voter registration and related procedures to, *inter alia*, implement the National Voter Registration Act of 1993 ("NVRA"), and precleared some of these procedures. ECF No. 131-1 at 1. In its letter, the Department noted that certain provisions of the submitted state legislation were enabling (such as designation of registration locations and statewide voter registration forms to implement the NVRA) and required separate Section 5 review when such provisions were adopted or finalized. *Id.* at 3. Finally, in *Sumter County*, the Department had precleared certain provisions of the South Carolina Home Rule Act but reserved judgment on the Sumter County changes that were uncertain and yet to take effect. *See* 555 F. Supp. at 704, n. 8. None of the cited examples presents a factual scenario similar to this case, in which the authorizing legislation that provided jurisdictions with the discretion to make certain changes will, itself, have a retrogressive effect on minority voters. A more apposite example is attached as Exhibit A. In File No. 2002-3457, the Department objected to a South Carolina state law decreasing the number of school board members for the Cherokee County School District from nine to seven. In that case, because the Department found there was no configuration of seven districts that would not have a retrogressive effect, preclearance was denied. *Id.* at 3.

- 2 -

not aware of any Section 5 case that adopts the standard for enabling changes that the State proposes and he does not believe that the Court needs to reach this question in order to make a preclearance determination.

In addition, although the change regarding early voting *hours* in Chap. 2011-40 is an enabling change that provides discretion to the counties to choose early voting hours within a certain range, the reduction in the number of early voting *days* in Chapter 2011-40 is a mandatory change that the counties must implement if precleared. Therefore, even the standard that the state proposes for enabling changes were applicable, it would apply only to that part of the change that is enabling in providing discretion to counties in setting the total number of early voting hours. It would not apply to the mandatory reduction in early voting days, which the counties have no choice but to implement.

Finally, based on the record before the Court, the early voting changes embodied in Chap. 2011-40 are discriminatory not only in effect but also in purpose, and preclearance should be denied on that basis. In essence, there is no set of facts supported by evidence under which the early voting changes can be considered not to have a retrogressive effect, nor a discriminatory purpose.

### The Proposed Early Voting Changes Are Retrogressive

The proposed changes significantly reduce the number of days on which voters can use early voting and will leave minority voters worse off in their ability to participate in the electoral process than they were before the change was adopted. Because the reduction in the number of days is mandatory, and not discretionary, this aspect of the early voting set of changes is not enabling, as the counties will be required to implement only eight days of early voting if the Court preclears that reduction in the number of days.

- 3 -

This change is retrogressive because the five covered counties will be required to cut out the first five days of early voting, days used disproportionately by minority voters, regardless of the number of hours that may be available. The number of days of early voting matters.[2]

The reduction in early voting days reduces the opportunity to vote early, notwithstanding the possibility that some counties may choose to offer the same number of hours during the fewer remaining days. The evidence shows that during the November 2008 election, African-American voters in the Covered Counties disproportionately used early voting as compared to white voters during the first five days of early voting—*i.e.*, the period eliminated by Chapter 2011-40. V14 7888-89, 7898-99; V14 7821. Because the best data source for predicting the use of early in-person voting during the upcoming 2012 general election is the 2008 general election, V14 7888-89; V10 5658-59; V11 5869-70, 5875-76, repealing the first five days of early voting will lead to retrogression in the upcoming general election.

Furthermore, several Supervisors of Elections from the covered counties have confirmed the extensive usage of the first five days of early voting, *see, e.g.*, V7 3769; V6 3140, 3182-83; V7 3529; and there is additional evidence demonstrating why the elimination of these days diminishes the opportunity to vote. *See, e.g.*, V17 9179; V7 3765; 3143 (describing how the elimination of days limits the opportunity to vote).

---

[2] The reduction of days of early voting proposed by Florida contrasts sharply to the other Section 5 submissions discussed in the United States' Notice in Response to Section 3(a) of the Court's June 22, 2012 Order. ECF No. 128. For example, when Georgia scaled back its early voting period, it still retained 21 days of early voting. Submission 2011-2380. In the case of Texas, it reduced a few days of early voting, but kept early voting starting on the 17th day before the election; the early voting period now ends on the fourth day before the election. *See* Submission No. 1997-1954; Texas Election Code §85.011. In both cases, the final number of days of early voting offered in Georgia (21) and Texas (14) is significantly greater than the eight days proposed by Florida.

- 4 -

The record here demonstrates that the reduction in early voting days in Chapter 2011-40 from 12 to 8 days is retrogressive. This discriminatory effect remains, regardless of the number of hours that may later be adopted in each covered county during the reduced number of early voting days.

**<u>The State Has Not Met Its Burden as to Purpose</u>**

In addition, the State has not met its burden of demonstrating that the proposed early voting changes do not have the purpose of discriminating in violation of Section 5. For that reason alone, the Court should not permit the State to adopt these changes in the five covered counties.

As outlined previously, there was no legitimate reason to reduce the number of early voting days. Election officials did not request these changes, V15 8290, V13 7226-27; V13 7538-40; V9 5145, the State has failed to show any demonstrated need for them, V13 7226-27; V13 7538-40; V9 5125-26; V14 7569-70, and the State has admitted there is no cost savings associated with these changes. V15 8681-82; V12 6315-16. The Senate President *Pro Tempore* who supported these changes stated that the purpose of the change was to make voting more difficult, like voting in Africa. V4 2242; *see also* V17 9102-04, 9114. The rationales offered in the legislative record were not supported by the evidence. *See* Proposed Finding of Fact 107(h).

Because the early voting changes in Chapter 2011-40 cannot be implemented "in a non-retrogressive fashion," and because the State has not met its burden on purpose, the proposed changes are not entitled to preclearance. The Court should deny the State's request for declaratory judgment.

- 5 -

Date:  July 6, 2012

Respectfully submitted,

RONALD C. MACHEN, JR.
United States Attorney
District of Columbia

THOMAS E. PEREZ
Assistant Attorney General
Civil Rights Division

*/s/ Elise Sandra Shore*

T. CHRISTIAN HERREN, JR.
JOHN ALBERT RUSS IV
ELISE SANDRA SHORE
CATHERINE MEZA
ERNEST A. MCFARLAND
Attorneys
Civil Rights Division
United States Department of Justice
950 Pennsylvania Ave. NW
Room NWB-72705
Washington, DC 20530
Telephone: (202) 305-0070
Facsimile:  (202) 307-3961