# Exhibit A



U.S. Department of Justice

Civil Rights Division

*Office of the Assistant Attorney General*         *Washington, D.C. 20035*

JUN 16 2003

C. Havird Jones, Jr., Esq.
Senior Assistant Attorney General
P.O. Box 11549
Columbia, South Carolina  29211-1549

Keith R. Powell, Esq.
Kenneth L. Childs, Esq.
Childs & Halligan
P.O. Box 11367
Columbia, South Carolina  29211-1549

Dear Messrs. Jones, Powell, and Childs:

    This refers to Act No. 416 (2002), which decreases the number of school board members from nine to seven, adopts a districting plan and an implementation schedule, raises the candidate filing fee to $200, authorizes the school board to further raise such fees, and the amended implementation schedule for the Cherokee County School District No. 1 in Cherokee County, South Carolina, submitted to the Attorney General pursuant to Section 5 of the Voting Rights Act, 42 U.S.C. 1973c.  We received your responses to our August 19, 2002, request for additional information through May 30, 2003.

    The Attorney General does not interpose any objection to the change in candidate qualifying procedures, an increase in the present qualifying fee to $200.00, and the ability of the school board to increase such fees in the future.  However, we note that Section 5 expressly provides that the failure of the Attorney General to object does not bar subsequent litigation to enjoin the enforcement of the changes.  See the Procedures for the Administration of Section 5 (28 C.F.R. 51.41).  With regard to the board's ability to increase the qualifying fee, Section 5 preclearance is required for any future increase in filing fees.

With regard to the decrease in the number of school board members from nine to seven, we have carefully considered the information you have provided, as well as information from our files, census data, and information and comments from other persons. In light of the considerations discussed below, I cannot conclude that your burden under Section 5 has been sustained in this instance. Therefore, on behalf of the Attorney General, I am compelled to object to the reduction in the size of the school board.

According to the 2000 Census, the school district has a population of 50,728 of whom 10,726 (21.1%) are black. The school board currently consists of nine members, elected in nonpartisan elections from single-member districts to serve four-year, staggered terms. Under 2000 Census data, Districts 2 and 8 in the benchmark plan have black total population percentages of 69.5 and 63.5, respectively.

Under the proposed changes, the size of the board is reduced to seven with black persons constituting a majority of the total population in only one of the seven districts. That district, District 1, has a black total population percentage of 60.6 percent and a black voting age population of 55.5 percent. The plan also contains a district with a significant minority population, District 4, which has a 41.3 percent black total population and a 36.5 percent black voting age population.

A proposed change has a discriminatory effect when it will "lead to a retrogression in the position of racial minorities with respect to their effective exercise of the electoral franchise." Beer v. United States, 425 U.S. 125, 141 (1976). If the proposed plan materially reduces the ability of minority voters to elect candidates of their choice to a level less than what they enjoyed under the benchmark plan, preclearance must be denied. State of Georgia v. Ashcroft, 195 F.Supp.2d 25 (D.D.C 2002) probable juris. noted, 123 S.Ct 964 (2003). In Texas v. United States, the court held that "preclearance must be denied under the 'effects' prong of Section 5 if a new system places minority voters in a weaker position than the existing system." 866 F.Supp. 20, 27 (D.D.C. 1994).

Our review of electoral behavior indicates that the benchmark plan has consistently provided black voters with the ability to elect candidates of choice in two of the nine districts.

The proposed plan contains only one majority black district, District 1. With a total black population percentage of 60.6, our examination of voting patterns leads us to conclude that black voters will retain the ability to elect candidates of choice. This conclusion is unchanged even considering the pairing of a white and a black incumbent.

However, we can not reach a similar conclusion with regard to the electoral ability of black voters in District 4 of the proposed plan. In your submission, you suggest that this district affords the minority community the potential to elect a candidate of choice because it provides black-preferred candidates support from a "viable cross-over phenomenon." The school board points to the results of the 2002 general elections for Cherokee County Clerk of Court and State Attorney General; both of which featured an interracial contest.

We have also examined the results of recent school board elections. Our regression analysis indicates that, generally, the level of black voter cohesion is lower for school board elections than it is for partisan elections. Similarly, the level of cross-over voting by white residents in Cherokee County is higher in the partisan elections. Since the black voting age population in the proposed district would be only 36.5 percent black, proposed District 4 would not provide black voters with the ability to elect a candidate of choice.

Of equal significance to our conclusion that black voters will not have the ability to elect a candidate of choice in District 4 is the consistent emphasis by the state and school board officials on the ability of the present black incumbent to get re-elected in that district, rather than the ability of the black community to elect a candidate of choice. Our analysis suggests that it is not clear that someone other than the present incumbent would benefit from the "cross-over phenomenon" that has been ascribed to his past candidacies.

Since minority voters would not retain the ability to elect a candidate of choice in District 4, they will only be able to elect a lower proportion of members to the school board. Currently, they are able to elect two of the nine school board members; under the proposed seven-member plan, that ability is reduced to one out of seven. As such, the proposed election plan has a retrogressive effect.

Further, it appears that there is no configuration of seven districts that will not have a retrogressive effect. In contrast, it is possible to devise such a plan with nine

districts, the size of the present board. In fact, the NAACP presented just such a plan to Rep. Phillips, as chair of the Cherokee County legislative delegation, at the May 2002 school board meeting. This nine-member plan conformed to the then-pending legislation that retained the number of officials at nine, the same number supported by a majority of the school board members. Here, the inability to devise any seven-member plan that is not retrogressive means that it is the voluntary change from nine to seven districts that the state has failed to establish will not have the prohibited effect. Beer v. United States, 425 U.S. at 141; Guidance Concerning Redistricting and Retrogression under Section 5 of the Voting Rights Act, 66 Fed. Reg. 5412 (January 18, 2001).

Under Section 5 of the Voting Rights Act, the submitting authority has the burden of showing that a submitted change does not have a discriminatory effect. Georgia v. United States, 411 U.S. 526 (1973); Reno v. Bossier Parish School Board, 528 U.S. 320 (2000); see also the Procedures for the Administration of Section 5 (28 C.F.R. 51.52). Based on the evidence detailed above, I cannot conclude that your burden has been sustained in this instance. Therefore, on behalf of the Attorney General, I must object to the reduction in the size of the school board.

Because the adoption of the districting plan and the change in the initial and amended implementation schedules are dependent upon the objected-to reduction in the number of school board members, it would be inappropriate for the Attorney General to make a preclearance determination on these related changes. See 28 C.F.R. 51.22.

We note that under Section 5 you have the right to seek a declaratory judgment from the United States District Court for the District of Columbia that the proposed changes neither have the purpose nor will have the effect of denying or abridging the right to vote on account of race, color, or membership in a language minority group. See 28 C.F.R. 51.44. In addition, you may request that the Attorney General reconsider the objection. See 28 C.F.R. 51.45. However, until the objection is withdrawn or a judgment from the District of Columbia Court is obtained, the changes continue to be legally unenforceable. Clark v. Roemer, 500 U.S. 646 (1991); 28 C.F.R. 51.10.

To enable us to meet our responsibility to enforce the Voting Rights Act, please inform us of the action the State of South Carolina plans to take concerning the reduction in the size of the school board for the Cherokee County School District.

If you have any questions, you should call Ms. Judybeth Greene (202-616-2350), an attorney in the Voting Section. Refer to File No. 2002-3457 in any response to this letter so that your correspondence will be channeled properly.

Sincerely,

Ralph F. Boyd, Jr.
Assistant Attorney General